UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL DUPAGE HOSPITAL ASSOCIATION,<br><br>               Plaintiff,<br><br>vs.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.; and DOES 1 THROUGH 25, INCLUSIVE,<br><br>               Defendants. | Case No.: 1:22-cv-01194<br><br>Hon. Mary M. Rowland<br><br>Removed from Cook County, Case No. 2022-L-000709 |

**PLAINTIFF CENTRAL DUPAGE HOSPITAL ASSOCIATION'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW**

Plaintiff, CENTRAL DUPAGE HOSPITAL ASSOCIATION (hereinafter "CDH" or "Plaintiff"), by and through its attorneys, Law Offices of Stephenson, Acquisto and Colman, hereby file this Opposition to the Motion to Dismiss of Defendant BLUE CROSS AND BLUE SHIELD OF MASSACHUSETS, INC. (hereinafter "BCBSMA" or "Defendant"), which was filed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

Defendant's motion to dismiss ("MTD") must be denied. CDH sufficiently pled its breach of implied in fact contract and *quantum meruit* causes of action seeking the usual and customary value of the services provided. *See* Complaint at Counts I & II. The fact that CDH believes the usual and customary value of those services to be equal to its total billed charges does not preclude CDH from seeking full recovery for the reasonable value of the services provided from Defendant.

As shown below, Defendant's MTD fails on a number of bases: i) the Complaint did plead sufficient facts to allege breach of implied-in-fact contract because the contract price is the usual

and customary value of the medically necessary services rendered by CDH and the parties meetings of the minds was demonstrated through the parties' alleged conduct; ii) Defendant's verification of benefits and/or authorization of treatment were some but not all of the circumstances that created a contract; and iii) CDH did sufficiently plead facts to allege a *quantum meruit* cause of action because Defendant both requested and benefited from the services rendered by CDH.

Nonetheless, should the Court grant Defendant's MTD, CDH respectfully requests the Court grant it leave to file an amended complaint to correct any perceived deficiencies.

## **STANDARD OF REVIEW**

The purpose of a motion under Fed.R.Civ.P. 12(b)(6) is to test the facial sufficiency of a complaint. It should be read alongside Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." The Court must "view all the complaint's allegations in the light most favorable to the plaintiff, consider the complaint's allegations as true, and accept all reasonable inferences therefrom." *Conley v. Gibson,* 355 U.S. 41, 45 (1957). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Bell v. Hood,* 327 U.S. 678, 682, (1946). A well-pled complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely'." *Twombly*, 550 U.S. at 556. Motions to dismiss should be granted only where it

appears beyond a doubt that plaintiff cannot prove any set of facts in support of the claim that would entitle plaintiff to relief. *Conley,* 355 U.S. at 45-46.

Accepting as true the well-pleaded allegations in the Complaint, and drawing all reasonable inferences therefrom in the light most favorable to CDH, the Complaint unquestionably informs Defendant of "the nature of the charges to be answered;" namely, that Defendant's reimbursement to CDH at the indicated values – sometimes with no payment at all – instead of CDH's usual and customary rates, has resulted in CDH's claims for breach of implied-in-fact contract and *quantum meruit*. The allegations of the Complaint meet the requirements under Illinois law for establishing such claims, and Defendants have not presented any evidence negating or refuting such claims. Accordingly, Defendant's motion should be denied.

## STATEMENT OF FACTS

CDH is a not-for-profit corporation organized and existing pursuant to the laws of the State of Illinois. *See* Complaint at ¶ 3. CDH provided medical care to Patients (as such term is defined herein), who were Defendant's beneficiaries when such medical care was provided. *Id*. Defendant is a domestic insurance company, incorporated in the State of Massachusetts, that ensures the Patients receive the healthcare and other services they need. *Id.* at ¶ 4. Between the dates of August 31, 2018 and August 8, 2020, CDH provided medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A to the Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling four (4) claims. *See* the Complaint at ¶ 11. Defendant failed to pay CDH fully and properly for the medically necessary services, supplies, and/or equipment rendered to Patients, despite demands

thereof. *Id.* at ¶ 17. As a direct and proximate result of Defendant's misconduct, CDH has suffered damages. *Id.* at ¶¶ 32, 54. Thus, on February 2, 2022, CDH filed its two-count complaint in the Circuit Court of Cook County, Illinois against Defendant for (i) breach of implied-in-fact contract and (ii) *quantum meruit*. *See generally* the Complaint. On March 7, 2022, Defendant filed a notice of removal to the United State District Court for the Northern District of Illinois, Eastern Division. On July 1, 2022, Defendant filed its Motion to Dismiss. *See* MTD.[1]

### ARGUMENT

**I.　BCBSMA'S MTD SHOULD BE DENIED BECAUSE THE COMPLAINT PROPERLY ALLEGES BREACHES OF AN IMPLIED-IN-FACT CONTRACT.**

CDH properly alleged in its Complaint that the parties entered into an implied-in-fact contract. Complaint ¶¶ 20-33. In Illinois, "an implied-in-fact contract must contain all the elements of an express contract, but unlike an express contract or other contract, its terms are inferred from the conduct of the parties." *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022). Like an express contract, there must be a meeting of the minds for the implied-in-fact contract to be valid. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp.2d 518, 531 (N.D. Ill. 2011). Whether the parties intended to enter into a contract is a question of fact to be determined by the trial court. *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 35. Unlike an express contract, however, acceptance of a contract implied-

---

[1] In July of 2022, the Parties entered into a settlement in principle, and spent the subsequent months negotiating a finalized settlement agreement. The Parties were ultimately unable to agree to key terms, moved to lift the stay in this action, and are now proceeding with a briefing on Defendant's motion to dismiss.

in-fact can be proven by circumstances demonstrating that the parties intended to be bound. *Id.* at ¶ 43. A "contract implied-in-fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *Kohlenbrener v. North Suburban Clinic, Ltd.,* 356 Ill. App.3d 414, 419, (2005). More specifically, an "implied-in-fact contract may be found by examination of the acts of the parties even in the absence of any express statement of specific agreement regarding the details of the contractual relationship." *Id.*

Whether a "meeting of the minds" occurred depends on the parties' objective conduct, and not their subjective beliefs. *Paxton–Buckley–Loda Educ. Ass'n, IEA–NEA v. Ill. Educ. Labor Relations Bd.*, 304 Ill. App.3d 343 (1999); see also *Northwestern Memorial Healthcare v. Aetna Better Health of Illinois, Inc.*, et al., 1:21-cv-02054, mem. & op. at pgs. 20-21 (N. Dist. Ill. March 31, 2023)[2](the Northern District court held that the plaintiff medical provider sufficiently alleged Defendant's conduct when it alleged that it "received authorization for treatment from Defendant and Defendant approved the admission of the patients."). As demonstrated, CDH sufficiently pled Defendant's objective conduct, including the following: a) CDH received authorization for treatment from Defendant (Complaint at ¶ 23); b) Defendant approved the admission of Patients (*Id.*); c) Defendant paid some portion, but not full and proper reasonable value of the claims; (*Id.* at ¶ 29); d) Defendant received premium payments for the Patients' enrollment and coverage in Defendant's respective health plans (*Id.* at ¶ 18); e) Defendant knew

---

[2] For the Court and parties' convenience, please see a copy of the court's memorandum and opinion in *Northwestern Memorial Healthcare v. Aetna Better Health of Illinois, Inc., et al.*, 1:21-cv-02054 (N. Dist. Ill. March 31, 2023), attached hereto as Exhibit 1.

and understood that CDH rendered the treatment to Patients with the expectation of being paid (*Id.* at ¶ 21); f) Defendant knew and understood, through industry custom and practice that CDH that CDH would render medically necessary care to Defendant's beneficiaries, submit bills for such care to Defendant and that Defendant would pay the usual and customary value to CDH for the necessary medical treatment rendered (*Id.* at ¶ 22); and g) Defendant represented that Patients were beneficiaries and verified eligibility, provided authorization numbers and approved admissions of Patients. *Id.* at ¶ 23. At no time did Defendant represent that it would not pay the usual and customary value to CDH for the necessary medical treatment rendered to Patients. *Id.* at ¶ 24.

Defendant and CDH also had a prior course of ongoing conduct, which included among other things: a) Defendant's issuance of identification cards to Patients; b) Defendant's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for; c) CDH communicating with Defendant to ask for authorizations to render medical care to Patients and Defendant issuing authorizations to CDH for such care; d) Defendant communicating to CDH the medical eligibility benefits for Patients without advising CDH that Defendant would not make full payment of the usual and customary value of services to be provided to Patients; e) Defendant sending written approvals to CDH for the specified medical services for Patients; and f) Defendant requesting that CDH send Defendant clinical information and medical records. *Id.* at ¶ 25. In addition, prior course of conduct by Defendant included CDH submitting claims to Defendant and in response, Defendant would properly pay the usual and customary value of

those claims. Over the last five (5) years, CDH has billed numerous claims and Defendant has satisfactorily paid on a number of claims submitted by CDH in the near identical manner and method as the facts alleged in its Complaint. *Id.* at ¶ 26.

Defendant wishes this Court to ignore the totality of Defendant's objective conduct as pled by CDH, and for the Court to microscopically focus on recognizable damages alone as a reason to escape liability. *See* MTD at pgs. 6-7. Defendant ignores that it already paid $498,846.03 for the services CDH provided at issue in this dispute. *See* Complaint at ¶ 29. Defendant, a nationally-recognized health insurance company, is not in the business of handing out free money. *See generally* MTD. Defendant's conduct was unambiguous. *See e.g. Alexian Bros. Health Providers Ass'n v. Humana Health Plan, Inc.,* 330 F. Supp.2d 970, 974 (N.D. Ill. 2004) (the court finding no ambiguity in conduct); *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶102, 34 N.E.3d 1132, 1157 (1st Dist. 2015) ("The intended meaning of ambiguous contract language may be derived from the circumstances surrounding the formation of a contract or from the conduct of the parties subsequent to its formation."); *see also Northwestern Memorial Healthcare v. Anthem Insurance Companies, et al.*, 1:21-cv-06306, mem. & op. at pg. 5 (N. Dist. Ill. May 23, 2022)[3](the Northern District court held that the allegations in the plaintiff hospital's Complaint that the defendant insurance company had a history of paying the hospital and the hospital's billing rates even just 50 percent of the time "is sufficient to raise an inference of a course of dealing demonstrating the parties' mutual agreement that [the insurance company]

---

[3] For the Court and parties' convenience, please see a copy of the court's memorandum and opinion in *Northwestern Memorial Healthcare v. Anthem Ins. Co., et al.* 1:21-cv-06306 (N. Dist. Ill. May 23, 2022), attached hereto as Exhibit 2.

would pay in full at [the hospital's] billed rates"). The question in this case is not whether Defendant is obligated to pay for the services rendered, but instead the amount that Defendant is obligated to pay.

Additionally, assuming *arguendo* that the implied-in-fact contract did not contain a price term, price terms can be inferred as being the reasonable value of services and survives a motion to dismiss. If there is an implied contract pursuant to which one party agrees to provide services to another and there is no provision setting forth the amount that is to be paid, the law implies an agreement to pay a reasonable price for the services. *Victory Memorial Hospital v. Rice*, 143 Ill. App.3d 621, 623 (2nd Dist. 1986); *Protestant Hospital Builders Club v. Goedde*, 98 Ill. App.3d 1028, 1031 (5th Dist. 1981). The courts in both cases determined that these contractual terms were too indefinite to enforce and held that the implied-in-fact contracts obliged plaintiffs to pay a reasonable price for the services rendered. *Id*. Implied-in-fact contracts arise from promissory expressions which may be inferred from facts and circumstances that show an intent to be bound. *Century 21 Castles By King, Ltd. v. First National Bank*, 170 Ill. App.3d 544, 548 (2nd Dist. 1988). An implied-in-fact contract to pay for services is established if the party seeking payment shows that the services were carried out under circumstances which would give the recipient reasons to understand that they had not been performed gratuitously or for some other person. *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App.3d 843, 851 (2nd Dist. 1991). In *Knecht Services, Inc.*, the court concluded that implied-in-fact contracts existed when the consumers contacted defendants to request their services and it was clear from the evidence that the consumers intended to pay for those services. *Id.* Here, the question of what the reasonable

value of the services performed is a question of fact and Defendant's MTD is inappropriate as Defendant's own conduct in already paying a portion of the alleged amount owed shows an intention to be bound.

Defendant confuses the requirement of an unambiguous promise to payment for a promissory estoppel cause of action with the requirement of unambiguous conduct for an implied-in-fact contract. *See* MTD at pgs. 6-7; citing to *A Centro Medico Panamericano, Ltd.v. Laborers' Welfare Fund of the Health & Welfare Dept. of the Constr. & Gen. Laborers' Dist. Coun. of Chicago & Vicinity*, 2015 IL App (1st) 141690., ¶¶ 13, 15; *Advanced Ambulatory Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.,* 261 F. Supp. 3d 889, 896 (N.D. Ill. 2017)*; Conn. Gen. Life Ins. Co. v. Southwest Surgery Ctr., LLC*, 349 F. Supp. 3d 718, 726 (N.D. Ill. 2018). CDH has not pled a promissory estoppel cause of action and therefore Defendant's reliance on such precedent is inappropriate. *See generally* the Complaint.

Finally, CDH plausibly alleges the existence of consideration as consideration is a detriment to the offeror or benefit to the offeree, or "some bargained-for exchange between them." *Doyle v. Holy Cross Hospital*, 186 Ill.2d 104, 112 (1999). CDH clearly identifies the detriment it incurred by the lack of full payment while performing services non-gratuitously. Complaint at ¶¶ 22-32. CDH also clearly identified the benefit directly conferred on Defendant as the provisions of medical services to Patients. *Id*. Directly on point regarding whether CDH plausibly alleges the existence of a benefit conferred to Defendant, the Illinois state court, in *Michael Reese Hosp. & Med. Ctr. v. Chicago HMO, Ltd*., found that a nearly identical pleading of facts as in CDH's Complaint successfully alleged a benefit conferred. *Michael Reese Hosp. &*

*Med. Ctr. v. Chicago HMO, Ltd*., 196 Ill. App. 3d 832, 836, (1st Dist. 1990). The plaintiff hospital alleged in its complaint that under the contract between the Illinois Department of Public Aid ("IDPA") and Chicago HMO, Ltd. ("CHMO"), IDPA provided payments to CHMO in exchange for which CHMO was to (1) provide medical services to CHMO members and (2) pay for all emergency services rendered by hospitals to its members, whether or not it had entered into a contract with those hospitals. *Id.* The plaintiff also alleged that a number of CHMO members had received treatment at the Michael Reese Hospital; that CHMO refused to fully reimburse the plaintiff for the care provided to such patients at the plaintiff's usual and customary rate and instead paid only the Illinois Competitive Access and Reimbursement Equity ("ICARE") rate; that IDPA did not intend the ICARE amount to be applied in reimbursing hospitals; that the payments CHMO received from IDPA on behalf of its members exceeded the ICARE amount; and that if CHMO were allowed to reimburse the plaintiff at the ICARE rate, and in some instances escape reimbursement entirely, it would be unjustly enriched. *Id.* The *Reese* court found that those allegations sufficiently alleged that CHMO had received a benefit, and that the retention of the benefit would be unjust and to the plaintiff's detriment. *Id.,* citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 137 (1989).

As such, for all of the above reasons, CDH's breach of implied-in-fact must survive and this Court should deny Defendant's MTD.

## II. BCBSMA'S MTD SHOULD BE DENIED BECAUSE THE COMPLAINT PROPERLY ALLEGES *QUANTUM MERUIT* CAUSES OF ACTION

To state a viable claim for *quantum meruit,* CDH must plausibly allege: "(1) that [it] performed a service to benefit the defendant; (2) [it] performed the service non-gratuitously; (3)

Defendant accepted [its] services; and (4) no contract existed to prescribe payment for this service." *Marcatante v. City of Chi., Ill*, 657 F.3d 433, 443 (7th Cir. 2011) (citing *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App.3d 961, 979 (1st Dist. 2010)). CDH's claims survive Defendant's attack for the following reasons.

      First, as described in Section II (a), under the analysis in *Michael Reese Hosp. & Med. Ctr.,* CDH successfully alleges it rendered a benefit to Defendant. *Michael Reese Hosp. & Med. Ctr.*, 196 Ill. App. 3d at 836. CDH pled that a) by treating Patients and initiating contact with Defendant, CDH provided benefits to Defendant and Defendant failed to compensate properly CDH for those received benefits, despite prior and on-going course of conduct, b) CDH rendered such treatments after the implied requests for such services by Defendant and CDH intended those services to benefit Defendant, and c) Defendant directly and deliberately benefited from those services by prompting, through its words, its prior and on-going conduct, and the custom and practice within the healthcare industry, that CDH perform those services on Patients who were beneficiaries of Defendant. *See* the Complaint at ¶¶ 40-45. By performing those services on Defendant's beneficiaries, CDH fulfilled Defendant's obligation to secure medically necessary healthcare for its beneficiaries. *Id*. at 46; *see also Northwestern Memorial Healthcare v. Aetna Better Health of Illinois, Inc., et al.*, 1:21-cv-02054, mem. and op. at pg. 23 (N. Dist. Ill. March 31, 2023)(The Court agreed with the plaintiff medical provider's contention that "by providing service to Defendant's beneficiaries, Defendant benefited because it was able to fulfill its obligation to secure medically necessary healthcare for its beneficiaries in exchange for the premium charged to the patients."). When Patients received those services, the express insurance

coverage made between Defendant and Patients was satisfied, and Defendant was able to retain rightly the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by CDH. *Id*. at ¶ 53. CDH appropriately established that Defendant is obligated to pay for services rendered to its beneficiaries by CDH. *Id.* at ¶¶ 34-54.

Second, CDH properly established that Defendant voluntarily accepted a benefit which would be inequitable for Defendant to retain without proper payment because the law implies a promise to pay reasonable compensation when valuable services are knowingly accepted. *Plastics & Equip. Sales Co. v. DeSoto, Inc*., 91 Ill. App.3d 1011, 1017, (1st Dist. 1980) CDH pled that Defendant knew of the services to be performed, instructed its beneficiaries (Patients) to provide insurance cards to CDH so as to give assurances to CDH that such care would be paid for; authorized the services to be performed; approved admission, requested medical records related to the services performed, and Defendant unjustly benefitted by not paying fully CDH for the reasonable values of such services. *See* Complaint at ¶¶ 34-54; *see also Northwestern Memorial Healthcare v. Aetna Better Health of Illinois, Inc., et al.*, 1:21-cv-02054, mem. and op. at pg. 24 (N. Dist. Ill. March 31, 2023)(The Court agreed with the plaintiff medical provider's contention that "[d]efendant instructed the patients to provide insurance cards to [p]laintiff and authorized and approved admission of the services to be performed."). Defendant promised Patients that it would pay medical providers like CDH who provided necessary medical treatment to Patients in exchange for Patient's premiums and satisfaction of its managed care agreements with Patients. *Id.* Defendant never objected to the services, and in fact partially paid for the services. *Id.* CDH presents evidence that Defendant authorized, had prior knowledge of

the services, and accepted the benefits of those services. *Cove Mgmt. v. AFLAC, Inc*., 2013 IL App (1st) 120884, ¶ 37.

Third, CDH may allege, and has properly alleged in the alternative, that no contract existed to prescribe for payment for this service. *Marcatante*, 657 F.3d at 443. A party accepting goods and services impliedly agrees to pay the reasonable and customary charges for those goods and services. *Victory Memorial Hospital*, 143 Ill. App.3d at 623. In this case, the reasonable and customary values are what are prescribed for payment.

Fourth, Defendant misconstrues the holding in *Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc*., 382 Ill. App.3d 973, 982–83 (1st Dist. 2008). The *quantum meruit* claim in *Midwest Emergency Assocs.* was dismissed because evidence in the case established that the rate of payment already paid to the providers was the reasonable value established by Medicaid. *Id*. at 983. The court noted that "Managed care risks extinguishment if all nonaffiliated emergency healthcare providers are entitled, under theories of quantum meruit and unjust enrichment, to full reimbursement for services provided to a managed care organization's enrollees." *Id*. The Court did not hold that non-affiliated providers for emergency and non-emergency authorized services are not entitled to recovery in *quantum meruit* **for the reasonable values of the services provided**. *Id.* (emphasis added).

In this case, however, Defendant has neither established that it paid the full rates under any contract nor the full reasonable value of the services, and it has not even controverted the fact that it did not pay anything on some of the claims in its MTD. *See generally* Ex. A. to the Complaint; *see also generally* MTD. Defendant is improperly attempting to turn the ruling of

*Midwest Emergency Assocs.,* which is a holding on the proper rate of payment, into a ruling on the **right of a non-affiliated provider to recover** the proper rate of payment for emergency and non-emergent authorized services. *Midwest Emergency Assocs.*, 382 Ill. App. 3d at 978.

Further, Defendant's citation to *Midwest Emergency Assocs.* is misleading as this statute does not require CDH to accept **any** payment as payment in full. That is the key difference here, as CDH has alleged that Defendant improperly paid for the medically necessary services CDH provided, and that Defendant paid some amount but not the proper amount, if anything at all. *See generally* Complaint. CDH alleges that it is due the reasonable value of the services provided. *Id.* at ¶ 50. CDH also believes that its usual and customary charges are the reasonable value for its services. *Id.* CDH is still allowed to pursue its causes of action for breach of implied in fact contract and *quantum meruit. See* Sect. I of this Response. It is a material question of fact what CDH's usual and customary charges are and whether Defendant paid the proper amount for such services. *Plumbers & Pipefitters Loc. No. 25 Welfare Fund v. Sedam*, 2014 WL 2731642, at 5 (C.D. Ill. June 16, 2014). However, Defendant has failed to meet its evidentiary burden to establish that Defendant already paid CDH at the reasonable and customary value for such services. *Id*. Such failure necessitates that this Court deny Defendant's MTD.

The only wronged and incomplete party is CDH. *See generally* the Complaint. Defendant earned the right to retain the premiums it collected from Patients for the treatment Defendants caused Patients to receive. *Id.* Patients received medically necessary care that improved their quality of life. *Id.* The only party to bear an inequitable position is CDH, who

received either partial or no payment for the four (4) claims. *Id.* CDH should be made whole and to be fairly compensated the provided services' reasonable value. *Id.*

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss.

Dated: 04/10/2023

          Respectfully submitted,

          LAW OFFICES OF STEPHENSON,
          ACQUISTO & COLMAN, INC.

By: /s/
One of the Attorneys for Plaintiff
CENTRAL DUPAGE HOSPITAL
ASSOCIATION

Marcus R. Morrow, Esq., ARDC #6317812
Kenneth J. Dusold, Esq. ARDC #6320561
LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC. (62848)
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
mmorrow@sacfirm.com
kdusold@sacfirm.com